UNITED STATES DISTRICT COURT        <u>NOT FOR PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
Douglas Johnson,                            :
                                         :
                 Petitioner,       :
                                           :                <u>ORDER</u>
              - against -               :
                                           :
David Rock,                              :       No. 11-cv-05945 (ERK)
                                           :
                 Respondent.      :
                                           :
-------------------------------------------------------- X

KORMAN, District Judge.

On August 31, 2012, I entered the following Order:

The petition for a writ of habeas corpus is denied. I assume familiarity with the evidence underlying the petitioner's conviction on the multi-count indictment. The only count on the indictment affected by the single ground raised in the petitioner's petition charged him with assault in the first degree in violation of section 120.10 of the N.Y. Penal Law. The latter provides that a person is guilty when "[w]ith intent to cause serious physical injury to another, causes such injury to such person . . . ." The petitioner argues that his brief post-arrest statement, in which he admitted "I wanted to kill [the victim]" should have been suppressed because it was given while he was intoxicated. Petitioner argued in his Appellate Division brief and that the alleged error was not "harmless beyond a reasonable doubt because without those damning words, his act of slashing the throat of the victim [could] just as easily seen as at most a reckless, but unintentional act . . . ." Pet. App. Div. Br. 52. The petitioner's claim may have some merit if an intent to kill was an element of the offense at issue. Such an intent is not an element of the offense. See, e.g., *People v. Stoby*, 771 N.Y.S.2d 623 (App. Div., 4th Dept., 2004) ("[E]vidence that defendant swung a knife and stabbed the victim in the back is legally sufficient to establish that he intended to cause serious physical injury."). My reading of the record suggests that it is inconceivable that the petitioner would not have been convicted even if his confession had not been admitted. The error was harmless under the standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Accordingly, it is unnecessary for me to reach the merits of his single ground for relief.

On September 4, 2012, I vacated this Order because, as I explained, "the District

Attorney did not expressly rely on the harmless error argument," and, under those circumstances,

I indicated that the merits of Johnson's claim should be addressed as well. I adhere to the view that the error was harmless. Indeed, one additional factor which I failed to note only confirms that conclusion. Specifically, Johnson did not testify at his trial as to his state of mind when he committed the assault on the victim. While an inference may not be drawn from his failure to testify, it is almost inconceivable that a defendant can prevail in a case such as this without testifying as to his lack of intent or attributing his conduct to his intoxication. This practical analysis of the record is not dependent on drawing an inference from his failure to testify. *See United States v. Male Juvenile*, 121 F.3d 34, 42 (2d Cir. 1997) (citing *United States v. Mullens*, 536 F.2d 997, 1000 (2d Cir. 1976)); *Ferranti v. United States*, No. 10-672, 2012 WL 1701524, *3 (2d Cir. May 16, 2012).

Before turning to the merits of the voluntariness of Johnson's confession, I offer this brief summary of the record of the suppression hearing. The prosecution's first witness was Suffolk County Police Officer Kenneth Ripp, who pulled over Johnson's car after seeing him driving erratically. Tr. 9. While being arrested, Johnson told Ripp that he had "a bunch of beers, so what? It's St. Patrick's Day." Tr. 13. Once at the police station, Ripp read Johnson his *Miranda* rights and asked him to consent to a chemical test to determine Johnson's blood alcohol content. Tr. 16. Johnson initially refused this request at 10:30 p.m. Johnson, however, gave written consent to the test at 10:59 p.m., signing his name in the wrong spot on the form. Tr. 65. At this time, Ripp again read *Miranda* warnings to Johnson. Tr. 19. Ripp asked Johnson if he understood his rights, to which Johnson replied, "yeah fuck it. What the fuck else would I do?" Tr. 20-21. Ripp asked Johnson if he wanted to contact a lawyer, to which Johnson replied that he is "all the way in Westchester. We will see." Tr. 22. Ripp then asked Johnson if he wished

to talk to the police without a lawyer, to which Johnson replied, "Yeah, I don't give a fuck." Tr. 22.

During questioning by Ripp, Johnson said that he had had about four beers since early that morning. Tr. 23. Later, Detective Mark Bendetti had Johnson in an interrogation room and asked Ripp to speak to him. Johnson was again read his rights and again agreed to speak to Ripp without an attorney. Ripp testified that he did not see Bendetti threaten Johnson. Tr. 28-29. Ripp also testified that when he walked into the room, Johnson was sobbing with his face in his hands, saying "I can't believe I killed my friend, I can't believe I killed my friend." Tr. 33. Ripp testified that Johnson never requested an attorney or asked for the questions to stop and at all times appeared to understand what was going on. Tr. 33-34. During this interrogation, Bendetti wrote a statement that was signed by Johnson and Johnson drew two pictures, one of the car he was driving and one of the knife he used in the car. Tr. 29-31. Ripp testified that he thought Johnson was intoxicated at the time he gave his statement in the interrogation room. Tr. 79.

The prosecution next called Suffolk County Police Officer Adam Quinones, who responded to the scene when Ripp pulled over Johnson. Tr. 89. Quinones transported Johnson to the police station. During the approximately eight minute ride, Johnson, without prompting, told Quinones that he had had a few beers that night and was just trying to get home. Tr. 91. Quinones testified that Johnson's breath smelled of alcohol. Tr. 95. Once at the police station, Johnson was able to walk from the police car and stand upright while being processed by Quinones. Tr. 97.

The prosecution next called Detective Mark Bendetti. Bendetti testified that he read Johnson his *Miranda* rights in the interrogation room with Ripp and that Johnson understood the rights and agreed to speak without an attorney present. Tr. 116. While Ripp spoke with

Johnson, Bendetti took notes and prepared a two page statement based on what Johnson said. Tr. 117. Bendetti read Johnson his rights again just before reading Johnson his statement and having him sign it. Tr. 119-120. Bendetti read the statement he prepared to Johnson and asked if he would like to make any corrections, which Johnson declined. Tr. 125. Bendetti testified that Johnson was never threatened during the conversation nor was he promised anything in return for the statement or drawings that he made. Tr. 131. Bendetti testified that Johnson's speech was slurred and that he was still intoxicated while giving his statement. Tr. 138. Johnson's counsel asked Bendetti if he knew that Johnson had a blood alcohol content of .19. Bendetti testified that he knew at the time of the interrogation that Johnson had a blood alcohol content that was over the legal limit to drive but did not know the precise number. Tr. 138-39.

Johnson did not call any witnesses at the suppression hearing. More significantly, he did not testify even though he could have done so without incriminating himself because he had automatic use immunity. *See Simmons v. United States*, 390 U.S. 377 (1968). I assume, notwithstanding this fact, the debatable proposition that an adverse inference could not be drawn from this fact. Nevertheless, the most critical evidence to support Johnson's argument that his admissions were involuntary due to intoxication would have been his own testimony. With a record devoid of this testimony, or any expert testimony that a person with Johnson's blood alcohol level was unable to voluntarily waive his rights, I am unable to say that the trial judge or the Appellate Division unreasonably applied established Supreme Court law in rejecting Johnson's contention that "he could not have understood and then made a voluntary waiver of his right to remain silent." *Johnson v. Rock*, No. 11cv5945, ECF No. 4-11, at 2 (E.D.N.Y.).

I add these brief and perhaps unnecessary words regarding AEDPA deference. A state court decision "involves an unreasonable application of clearly established federal law if the

state court identifies the correct governing legal principle from Supreme Court precedent, but unreasonably applies that principle to the facts of the case." *Brown v. Payton*, 544 U.S. 133, 141 (2005). In order to warrant habeas corpus relief, the application of federal law "must be shown to be not only erroneous, but objectively unreasonable." *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009) (internal quotation marks omitted); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (holding that "objectively unreasonable" is not the same as "clear error," which "fails to give the proper deference to state courts by conflating error (or even clear error) with unreasonableness"). Moreover, as the Supreme Court has recently held, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011). And an evaluation of "whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Id.* at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). This standard is "difficult to meet, because the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Greene v. Fisher*, 132 S. Ct. 38, 43 (2011) (alteration in original) (internal quotation marks omitted).

The state judge here identified the correct governing legal principle, i.e., the general standard for the voluntariness of a confession, and his application of that principle to the facts as he found them, as affirmed by the Appellate Division, *People v. Johnson*, 916 N.Y.S.2d 510 (App. Div. 2d Dept., 2011), was not unreasonable. Nor was his finding or that of the Appellate

Division that "[i]ntoxication alone does not determine the question of comprehension and waiver." Indeed, the Second Circuit "has not addressed the issue of whether a defendant's [voluntary] intoxication renders his statement inadmissible." *United States v. Thompson*, 528 F.3d 110, 120 (2d Cir. 2008). Nor has the Supreme Court.

Accordingly, for the foregoing reasons, the petition for a writ of habeas corpus is denied.

**SO ORDERED.**

Brooklyn, New York
September 7, 2012

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge